## UNITED STATES BANKRUPTCY COURT
## DISTRICT OF MINNESOTA

IN RE:                                                    Bankruptcy No. 09-48229-RJK

    E151 MINNESOTA INC.                                              Chapter 7

    Debtor.

## NOTICE OF HEARING ON THE TRUSTEE'S MOTION FOR AUTHORIZATION TO SELL RIGHTS TO PAYMENTS TO WHICH THE ESTATE MAY BE ENTITLED PURSUANT TO A CLASS ACTION LITIGATION

**PLEASE TAKE NOTICE** that on September 14, 2011, 2011 at 9:30 a.m. before the Honorable Robert J. Kressel, in Courtroom No. 8 West, United States Courthouse, 300 South Fourth Street, Minneapolis, Minnesota, the Trustee, Timothy D. Moratzka by and through his counsel, Mackall, Crounse & Moore, PLC, will move the Court for an Order Pursuant To Sections 363(b), (f) and (m) of the Bankruptcy Code and Bankruptcy Rules 2002 and 6004 authorizing the trustee to sell rights to payments to which the debtor may be entitled pursuant to the class action interchange litigation captioned as follows: In re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation (Case No. 1:05-md-01720-JG-JO) ("Class Action Interchange Litigation") (or to any subsequently filed amended complaints) filed in the United States District Court for the Eastern District of New York ("Eastern District Court"), free and clear of all liens, claims and encumbrances thereon.

Any response to this motion must be filed and served not later than September 9, 2011, which is five days before the time set for the hearing (including Saturdays, Sundays, and holidays). UNLESS A WRITTEN RESPONSE IS TIMELY FILED, THE COURT MAY GRANT THE MOTION WITHOUT A HEARING.

Dated: <u>August 25, 2011</u>                     MACKALL, CROUNSE & MOORE, PLC

By <u>/e/Timothy D. Moratzka</u>
Timothy D. Moratzka (# 75036)
Mychal A. Bruggeman (#0345489)
1400 AT&T Tower
901 Marquette Avenue
Minneapolis, MN  55402
(612) 305-1400

**ATTORNEYS FOR TRUSTEE**

1436556.1-TDM

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

IN RE:                                                                Bankruptcy No. 09-48229-RJK

E151 MINNESOTA INC.                                                                Chapter 7

Debtor.

**TRUSTEE'S MOTION PURSUANT TO SECTIONS 363(b), (f), AND (m) OF THE
BANKRUPTCY CODE AND BANKRUPTCY RULES 2002 AND 6004 FOR
AUTHORIZATION TO SELL RIGHTS TO PAYMENTS TO WHICH THE
ESTATE MAY BE ENTITLED PURSUANT TO A CLASS ACTION**

Timothy D. Moratzka ("Trustee") hereby moves this Court for the entry of an Order,

pursuant to Sections 105(a) and 363 of the Bankruptcy Code approving the sale of any right to

payment to which the Debtor may be entitled pursuant to a Class Action described below, and

respectfully represents as follows:

**Background**

1.     On December 3, 2009 ("Commencement Date"), an involuntary case under

section 303 of title 11 of the United States Code ("Bankruptcy Code") was commenced against

the Debtor with this Court.  An order of relief was entered against the Debtor on December 29,

2009.  Timothy D. Moratzka was appointed trustee on January 27, 2010 ("Appointment Date").

The Trustee has been liquidating the Debtor's assets pursuant to Title 11 of the United States

Code and the authority granted by the Court.  The Trustee is engaged in efforts to ensure that the

value of the estate's assets are realized, which efforts include pursuing the sale of all remaining

assets.

## Jurisdiction

2.    This Court has jurisdiction to consider this matter pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b).  Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

## Relief Requested

3.    By this motion, pursuant to section 363 of the Bankruptcy Code and Rules 2002 and 6004 of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules"), the Trustee seeks authorization to sell the rights to any payments the Debtor may recover as a result of its potential involvement as a putative class member in the litigation styled In re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation (Case No. 1:05-md-01720-JG-JO) ("Class Action Interchange Litigation") (or to any subsequently filed amended complaints) filed in the United States District Court for the Eastern District of New York ("Eastern District Court"), free and clear of all liens, claims and encumbrances thereon.

## The Class Action Interchange Litigation

4.    On February 20, 2009, the Class Action Interchange Litigation was commenced in the Eastern District Court by various retailers and trade associations ("Plaintiffs") against, among other entities, Visa U.S.A. Inc. ("Visa") and Mastercard International, Inc. ("Mastercard" and collectively with all other named defendants in the Class Action Interchange Litigation, the "Defendants").  The Plaintiffs claim that, between January 1, 2004 and the present, the Defendants conspired to unlawfully fix the price of "interchange fees" and other fees charged to merchants for transactions processed over the Visa and Mastercard networks.  An interchange fee is a fee that a merchant's bank pays a customer's bank when merchants accept cards using card networks such as Visa and MasterCard for purchases.

2

5.      As of the date hereof, the Plaintiffs have not yet certified a class in the Class Action Interchange Litigation, a trial date has not been announced, and a settlement ("Settlement") has not been reached.  If the Plaintiffs are successful in certifying a class and either prevail in the Class Action Interchange Litigation or such litigation results in a Settlement ("Settlement Event"), the Debtor may be included in the class and, accordingly, may be entitled to a monetary recovery ("Asset").  At this time, however, it is impossible to predict whether the Plaintiffs will prevail or whether a Settlement Event will occur, but any disposition is several years away.

### The Trustee's Proposed Sale of the Debtor's Right to the Payments

6.      In order to bring additional assets into its estate, the Trustee proposes to sell the Debtor's contingent rights to the Asset to Cascade Settlement Services, LLC ("Purchaser" or "Cascade").  The Trustee negotiated the Asset Purchase and Sale Agreement ("Sale Agreement"), annexed hereto as Exhibit A, with the Purchaser.

7.      The Sale Agreement provides for the sale of the Asset by the Trustee to the Purchaser for a cash purchase price of $130,000 ("Purchase Price").  Having failed to receive any other inquiries or offers for the Asset and given Cascade's assumption of certain risks, including:  (a) the risk that the Plaintiffs fail to certify a class in the Class Action Interchange Litigation; (b) the risk that a Settlement Event does not occur; (c) the risk that the case is dismissed; (d) the risk that the Defendants prevail; (e) the risk that the size of any potential settlement fund is unknowable prior to the Settlement Event; and (f) the risk that the ultimate payment of any awards could occur many years into the future, the Trustee negotiated the Sale Agreement with the Purchaser after investigation of the Class Action Interchange Litigation.

8.      Subject to this Court's approval of the Sale Agreement, the sale of the Asset to the Purchaser will be free and clear of any and all claims, liens, encumbrances, judgments and

security interests.  None are known to exist.  Any asserted liens will attach to the proceeds.  The

salient terms of the Sale Agreement are summarized below:[1]

- **Sale and Purchase of Asset.**  Purchaser agrees to purchase all right, title and interest in the Asset from the Trustee, and the Trustee agrees to sell, transfer and assign all right, title and interest in the Asset to Purchaser (Sale Agreement §§ J & 2.1).

- **Payment of Purchase Price.**  In consideration for the sale of the Asset by the Trustee to Purchaser, Purchaser will wire transfer to the Trustee the Purchase Price using wire instructions to be provided by the Trustee, within 14 business days of the later of (i) full execution of the Sale Agreement; and (ii) approval of the Sale by the Bankruptcy Court (Sale Agreement §2.2).

- **Notice of Assignment.**  In addition to the Sale Agreement, the Parties will execute a Notice of Assignment and Authorization to Obtain Transactional Data (Sale Agreement §2.7).

- **No Assumption of Obligations or Liabilities.**  Upon the execution of the Sale Agreement, Purchaser shall assume all obligations and liabilities relating to the Asset but shall not assume, or in any way become liable for, any obligation or liability of the Trustee or Debtor independent of the Asset (Sale Agreement §2.8).

- **Title to Asset; No Liens.**  The Trustee represents and warrants that the estate has good, valid and marketable title to the Asset and the Asset is free and clear of any mortgage, pledge, lien, security interest, claim or encumbrance.  The Trustee has not transferred the Asset or any interest therein except to Purchaser under the Sale Agreement (Sale Agreement §3.5).

- **No Fiduciary or Confidential Relationship.**  The Trustee acknowledges that the Trustee and Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship, including one of trust, confidence or privity, and that the Trustee and Purchaser are each acting for their own self interest and Purchaser acknowledges same (Sale Agreement §§3.14 & 4.12).

- **Waiver of Claims.**  The Trustee covenants that, to the maximum extent permitted by law, he will not assert and will waive any and all claims against Purchaser or any of its members, officers, directors, employees, agents or affiliates with respect to the Sale Agreement, any Ancillary Agreement or the transactions contemplated

---

[1]  The following represents only a summary of the salient provisions of the Sale Agreement; the Sale Agreement itself should be referred to in its entirety for the specific terms and conditions thereof.  If there is any inconsistency between the following summary and the Sale Agreement, the terms and conditions of the Sale Agreement will control.  Capitalized terms used, but not defined in the following summary, have the meaning ascribed to such terms in the Sale Agreement.

in the Sale Agreement or thereby based on any claim that Purchaser had superior or additional information material to a decision to sell or buy the Asset (Sale Agreement §5.2).

**Sale of the Estate's Right to the Asset Pursuant to the Terms of the Sale Agreement**
**Is an Appropriate Exercise of Sound Business Judgment and Should Be Approved**

9.      Under section 363 of the Bankruptcy Code, a trustee may sell property of its estate outside of the ordinary course of its business, subject to the approval of the court after notice and a hearing.  See 11 U.S.C. § 363(b)(1).  It is well settled that a decision to sell assets outside the ordinary course of business be based upon the sound business judgment of the trustee.  See, e.g., In re Martin, 91 F.3d 389 (3d Cir. 1996), citing, In re Schipper, 933 F.2d 513 (7th Cir. 1991); Stephens Indus., Inc. v. McClung, 789 F.2d 386 (6th Cir. 1986); In re Lionel Corp., 722 F.2d 1063 (2d Cir. 1983); Licensing By Paolo, Inc. v. Sinatra (In re Gucci), 126 F.3d 380, 387 (2d Cir. 1997) ("A sale of a substantial part of a Chapter 11 estate may be conducted if a good business reason exists to support it."); Comm. of Equity Security Holders v. Lionel Corp. (In re Lionel Corp.), 722 F.2d 1063, 1071 (2d Cir. 1983); In re Chateaugay Corp., 973 F.2d 141, 143 (2d Cir. 1992); Stephens Indus. v. McClung, 789 F.2d 386, 390 (6th Cir. 1986) ("bankruptcy court can authorize a sale of all a Chapter 11 Debtor's assets under [section] 363(b)(1) when a sound business purpose dictates such action."); Comm. of Asbestos-Related Litigants v. Johns-Manville Corp. (In re Johns-Manville Corp.), 60 B.R. 612, 616 (Bankr. S.D.N.Y. 1986) ("Where the debtor articulates a reasonable basis for its business decisions (as distinct from a decision made arbitrarily or capriciously), courts will generally not entertain objections to the debtor's conduct.").

10.      Courts typically consider the following four factors in determining whether a proposed sale satisfies this standard:

- whether a sound business justification exists for the sale;

- whether adequate and reasonable notice of the sale was given to interested parties;

- whether the sale will produce a fair and reasonable price for the property; and

- whether the parties have acted in good faith.

See, e.g., In re Weatherly Frozen Food Group, Inc., 149 B.R. 480, 483 (Bankr. N.D. Ohio

1992); In re Delaware & Hudson Ry. Co., 124 B.R. 169, 176 (D. Del. 1991).

11.    The Trustee submits that sound business justification exists which merits judicial

approval of the proposed sale.  The Purchase Price is reasonable and, to the best of the Trustee's

knowledge, there is no other potential buyer willing to pay more for this contingent asset.

Although, absent the sale, the Trustee could collect the value of the Asset, if any, in due time, the

estate does not have additional time to spare to wait to determine if the Asset will have value.

The business of the Debtor has been terminated and the Trustee is liquidating the Debtor's assets.

Indeed, a trial has not been commenced in the Class Action Interchange Litigation and a class

has yet to be certified.  It may be years before the estate would recover anything, assuming a

class is certified in the Class Action Interchange Litigation, the Debtor is a member of the class,

and the class is successful in obtaining a recovery.  Therefore, the benefit of receiving immediate

payments for a contingent asset that may not otherwise result in a recovery for several years is

clear.  The sale will allow the Trustee to realize additional funds for the benefit of its estate,

thereby increasing the pool of assets available for creditor distribution.  The Trustee has provided

notice of this motion pursuant to orders of this court and the Bankruptcy Code and Rules.  Thus,

it is the Trustee's sound business judgment that the value to be realized by the Debtor's estate

through the sale of the Asset, and the fact that the proposed sale is the end result of good-faith

negotiations between the Trustee and the Purchaser, the proposed sale of the Asset to the

Purchaser is in the best interest of the Debtor's estate and its creditors.

### An Auction of the Debtor's Rights to the Contingent Asset Is Not Required

12.   In accordance with Bankruptcy Rule 6004(f)(1), asset sales outside of the ordinary

course of business may be by private or public sale. Fed. R. Bankr. P. 6004(f)(1).  A trustee has

broad discretion in determining the manner in which its assets are sold. *Berg v. Scanlon (In re

Alisa P'ship)*, 15 B.R. 802, 802 (Bankr. D. Del. 1981) ("[T]he manner of [a] sale is within the

discretion of the trustee . . ."); *In re Bakalis*, 220 B.R. 525, 531 (Bankr. E.D.N.Y. 1998) (noting

that a trustee has "ample discretion to administer the estate, including authority to conduct public

or private sales of estate property") (internal quotations and citations omitted).  As long as a

trustee maximizes the return to its estate, a court should defer to a trustee's business judgment of

how to conduct a sale of its assets.  *Id.* at 532 (recognizing that although a trustee's business

judgment enjoys great judicial deference, a duty is imposed on the trustee to maximize the value

obtained from a sale); *In re Nepsco, Inc.*, 36 B.R. 25, 26 (Bankr. D. Me. 1983) ("Clearly, the

thrust of th[e] statutory scheme [governing 363 sales] is to provide maximum flexibility to the

trustee, subject to the oversight of those for whose benefit he acts, i.e., the creditors of the

estate.").  Accordingly, if a trustee concludes that conducting a private sale, as opposed to a

public auction, is in the best interest of the estate, the trustee should be permitted to do so.  *Penn

Mut. Life Ins. Co. v. Woodscape Ltd. P'ship (In re Woodscape Ltd. P'ship),* 134 B.R. 165, 174

(Bankr. D. Md. 1991) (noting that, with respect sales of estate property, "[t]here is no prohibition

against a private sale . . . and there is no requirement that the sale be by public auction").

13.   The Trustee submits that a private sale of the estate's rights to the Asset is

appropriate.  The Trustee does not believe that there are any other parties that would offer to

purchase this Asset.  The delay and costs associated with marketing the estate's rights to the

Asset would likely negate any benefit derived through a public sale of the Asset.  Accordingly,

the Trustee submits that a private sale of the estate's rights to the Asset is in the best interest of

the Debtor's estate and should be approved.

### Sale of the Estate's Rights to the Asset
### <u>Clear of Liens, Claims and Encumbrances Is Appropriate</u>

14.    The Trustee further submits that it is appropriate that its rights to the Asset be sold

free and clear of liens, claims and encumbrances pursuant to section 363(f) of the Bankruptcy

Code, with any such liens, claims, encumbrances, or interests to attach to the sale proceeds

thereof.  Section 363(f) of the Bankruptcy Code provides:

> The trustee may sell property under subsection (b) or (c) of this section
> free and clear of any interest in such property of an entity other than the
> estate, only if—
>
> (1) applicable nonbankruptcy law permits sale of such property free and
> clear of such interest;
>
> (2) such entity consents;
>
> (3) such interest is a lien and the price at which such property is to be sold
> is greater than the aggregate value of all liens on such property;
>
> (4) such interest is in bona fide dispute; or
>
> (5) such entity could be compelled, in a legal or equitable proceeding, to
> accept a money satisfaction of such interest.

11 U.S.C. § 363(f).

15.    To facilitate the sale of the estate's rights to the Asset, the Trustee seeks

authorization to sell such rights free and clear of any and all liens, claims and encumbrances,

with such liens, claims and encumbrances to attach to the net proceeds of such sale with the same

rights and priorities therein.  Because section 363(f) is stated in the disjunctive, when selling

property of the estate, it is only necessary to meet one of the five conditions of that section.

8

11 U.S.C. § 363(f). *See Citicorp Homeowners Servs., Inc. v. Elliot (In re Elliot)*, 94 B.R. 343, 345 (E.D. Pa. 1988) ("[Section 363(f)] is written in the disjunctive, not the conjunctive. Therefore, if any of the five conditions of § 363(f) are met, the trustee has the authority to conduct the sale free and clear of all liens").

16.    As of the date hereof, the Trustee is not aware of any liens or interests held by any party in respect of the estate's rights to the Asset.  The Trustee submits that the Court should authorize the sale of the estate's rights to the Asset free and clear of any and all liens, claims and encumbrances, with any of the same to be transferred and attached to the net proceeds of the sale, with the same validity and priority that such liens, claims and encumbrances had against the rights to the Asset.  Thus, the sale of the Debtor's rights to the Asset free and clear of liens, claims and encumbrances will satisfy the statutory prerequisites of section 363(f) of the Bankruptcy Code.

### **Good-Faith Purchaser**

17.    Section 363(m) of the Bankruptcy Code protects the sale of a debtor's property to a good-faith purchaser.  Section 363(m) provides:

> The reversal or modification on appeal of an authorization under subsection (b) or (c) of this section of a sale or lease of property does not affect the validity of a sale or lease under such authorization to an entity that purchased or leased such property in good faith, whether or not such entity knew of the pendency of the appeal, unless such authorization and such sale or lease were stayed pending appeal.

11 U.S.C. § 363(m).

18.    Although the Bankruptcy Code does not define "good faith purchaser," the United States Court of Appeals for the Third Circuit ("Third Circuit") has noted that the phrase "encompasses one who purchases in 'good faith' and 'for value.'"  *In re Abbotts Dairies of Pa., Inc.*, 788 F.2d at 147.  Further, the Third Circuit has recognized that the type of misconduct that

9

would destroy a purchaser's good faith status involves "'fraud, collusion between the purchaser

and other bidders or the Debtor, or an attempt to take grossly unfair advantage of other bidders.'"

*Id.* (citing *In re Rock Indus. Mach. Corp.*, 572 F.2d 1195, 1198 (7th Cir. 1978)).  The Trustee has

in good faith and without collusive action negotiated the terms and conditions of the sale of the

Debtor's rights to the Asset to the Purchaser.  Accordingly, the Trustee requests the Court

determine the Purchaser to be acting in good faith and entitled to the protections afforded to good

faith purchasers under section 363(m) of the Bankruptcy Code.

19.    To successfully implement the Sale Agreement, the Trustee seeks a waiver of the

fourteen-day stay under Bankruptcy Rule 6004(h).

## No Previous Request

20.    The Trustee has made no previous request for the relief sought herein to this or any

other court.

WHEREFORE, the Trustee respectfully requests entry of an order granting the relief

requested herein and such other and further relief as is just.

Dated: <u>August 25, 2011</u>                          MACKALL, CROUNSE & MOORE, PLC

By <u>/e/Timothy D. Moratzka</u>
Timothy D. Moratzka (# 75036)
Mychal A. Bruggeman (#0345489)
1400 AT&T Tower
901 Marquette Avenue
Minneapolis, MN  55402
(612) 305-1400

**ATTORNEYS FOR TRUSTEE**

1436500.1-TDM

10

### Exhibit A - Sale Agreement

## ASSET PURCHASE AND SALE AGREEMENT

THIS ASSET PURCHASE AND SALE AGREEMENT ("Agreement") is made and entered into this _____ day of _____, 2011, by and between CASCADE SETTLEMENT SERVICES, LLC, a Delaware limited liability company ("Purchaser"), and Timothy D. Moratzka ("Trustee"), as trustee for E151 Minnesota, Inc. fdba Snyder's Drug Stores, Inc., a debtor in bankruptcy, case number 09-48229 in the District of Minnesota ("Seller").  Purchaser and Seller are sometimes collectively referred to in this Agreement as "Parties" or individually as "Party."

## RECITALS

A.   On December 3, 2009 ("Commencement Date"), an involuntary case under section 303 of title 11 of the United States Code ("Bankruptcy Code") was commenced against the Debtor in the United States Bankruptcy Court for the District of Minnesota (Minneapolis) ("Bankruptcy Court").  Timothy D. Moratzka was appointed as Successor Chapter 7 Trustee for the Debtor ("Trustee") on January 27, 2010 ("Appointment Date").

B.   Since the Appointment Date, the Trustee has liquidated the Debtor's assets pursuant to authority granted to it by the Bankruptcy Court.

C.   The Trustee has the statutory responsibility to collect and reduce to money all of the property of the Bankruptcy Estate, including contingent interests, and close such Bankruptcy Estate as expeditiously as is compatible with the best interests of parties in interest pursuant to Bankruptcy Code section 704(a)(1).

D.   On February 20, 2009, a Second Amended Class Action Complaint entitled In re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation (Case No. 1:05-md-01720-JG-JO) ("Litigation") was filed in the United States District Court for the Eastern District of New York ("District Court").  If the plaintiffs in the Litigation are successful in certifying a class and either prevail in the Litigation or such Litigation results in a settlement ("Settlement Event"), the Seller may be included in the class and, accordingly, may be entitled to a monetary recovery ("Asset").  Whether such recovery will occur is unknown by Seller and Purchaser at the time of this Agreement. If no Settlement Event takes place, the Asset will have no value.

E.   Purchaser is not affiliated with any counsel involved in the Litigation or the District Court.

F.   Following a Settlement Event, it is anticipated that the fixed aggregate amount of the settlement will be allocated *pro rata* among claimants to the settlement proceeds, in a manner to be described in documents approved by the District Court.

G.   All terms used herein and not defined herein shall have the meanings given such terms in the Litigation filings.

H.  The Parties intend to transfer from Seller to Purchaser any and all of the its right, title and interest in and or associated with, or connected in any manner to, any Asset that may arise from the Litigation.

I.  Purchaser is in the business of purchasing claims from entities entitled to recover funds from both existing class action lawsuit settlements and from pending class action litigation that may or may not result in a settlement.

J.  Purchaser desires to purchase the Asset from Seller, and Seller desires to sell the Asset to Purchaser as provided for in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants, agreements, representations and warranties contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## SECTION 1 – RECITALS INCORPORATED IN AGREEMENT

1.1  The above recitals are hereby incorporated herein by reference.

## SECTION 2 – TERMS OF PURCHASE AND SALE

2.1.  <u>Sale and Purchase of Asset</u>.  On the terms and subject to the conditions and other provisions set forth in this Agreement, Purchaser agrees to purchase all right, title and interest in the Asset from Seller, and Seller agrees to sell, transfer and assign all right, title and interest in the Asset to Purchaser subject to approval of the Bankruptcy Court, for the sum of $130,000 ("<u>Purchase Price</u>").  Following approval by the Bankruptcy Court, the sale shall be final.

2.2.  <u>Payment of Purchase Price</u>.  In consideration for the sale of the Asset by Seller to Purchaser, in accordance with this Agreement, Purchaser will wire transfer to Seller the Purchase Price using wire instructions to be provided by Seller, within 14 business days of (i) full execution of this Agreement; and (ii) approval of the sale subject to the terms of this Agreement by the Bankruptcy Court.

2.3.  <u>Purchase in Good Faith</u>.  Seller acknowledges the Purchaser's requirement that it be determined to be a "Purchaser in Good Faith" pursuant to 11 U.S.C. §363(m) in the Bankruptcy Court order approving this Agreement.

2.4.  <u>Cooperation of Seller</u>.  Seller understands and acknowledges that in order for Purchaser to verify and/or collect the Asset, Purchaser may require Seller's reasonable assistance in the event that a claims administrator appointed in the Litigation ("<u>CA</u>"), Lead Counsel or the District Court audits and/or withholds payment on the Asset pending verification of data within Seller's reasonable possession and/or control.

2

2.5.   Remedy for Disallowed Purchase.  If the Purchase is disallowed, for any reason, following the payment of the Purchase Price, notwithstanding Bankruptcy Court approval, the Purchaser retains the right to recover from future recoveries from the Litigation an amount equal to the sum of the Purchase Price plus interest accrued at an annual rate of 10% ("Interest Payment").  The Interest Payment will be assessed for the period of time elapsed between the date of the payment of the Purchase Price and date the Purchase Price has been repaid to the Purchaser.

2.6.   Actions by Purchaser.  Purchaser expressly reserves the right to take any steps it deems reasonable and necessary in order to maximize Purchaser's recovery in respect to the Asset.

2.7.   Ancillary Agreement.  In addition to this Agreement, the Parties will enter into the following additional agreement:  Notice of Assignment and Authorization to Obtain Transactional Data.

2.8.   No Assumption of Obligations or Liabilities.  Upon the later of (i) full execution of this Agreement; and (ii) approval of the sale subject to the terms of this Agreement by the Bankruptcy Court, Purchaser shall assume all obligations and liabilities relating to the Asset but shall not assume, or in any way become liable for, any other obligation or liability of the Seller independent of the Asset.

## SECTION 3 - REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Purchaser as follows:

3.1.   Organization.  Debtor is a corporation duly organized, validly existing and in good standing under the laws of the state of its organization.

3.2.   Authorization.  The Trustee, subject to Bankruptcy Court approval, has the requisite power and authority to own the Asset as currently owned, to execute and deliver this Agreement or any Ancillary Agreement, and to perform the transactions contemplated hereby or thereby, and that such performance does not constitute a violation of the Debtor's certificate of incorporation, by-laws or any other valid instrument to which the Debtor or Trustee are a party or by which the Debtor or Trustee may be bound.

3.3.   Due Execution; Validly Binding Agreement.  This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Seller, enforceable against it in accordance with its terms as approved by the Bankruptcy Court.

3.4.   No Litigation.  There is no known suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or threatened against the Seller or concerning the Asset that could prevent or prohibit Seller from selling the Asset or from otherwise complying in full with the provisions of this Agreement except for the requirement of Bankruptcy Court approval for the sale of the Asset.  Subject to Bankruptcy Court approval, transfer of the Asset pursuant to this Agreement will not

3

breach, violate or otherwise contravene any applicable law, statute, regulation or contractual term.

3.5.   <u>Title to Asset; No Liens</u>.  Seller has good, valid and marketable title to the Asset and can sell the Asset as free and clear of any mortgage, pledge, lien, security interest, claim or encumbrance pursuant to section 363(f) of the Bankruptcy Code. Seller has not transferred the Asset or any interest therein except to Purchaser hereunder.

3.6.   <u>Information Provided to Purchaser</u>.  All information provided to Purchaser by Seller in connection with the sale of the Asset, including, but not limited to, information on dates on which the Debtor began accepting Visa and/or MasterCard credit card and/or debit transactions, financial information about the Debtor's business (including total United States sales) and any other representations actually or potentially concerning the asset is true, correct and complete. Seller has made the following Representations or Warranties to Purchaser:

    i.    Seller has not had any communications with the District Court, Lead Counsel or any other entity affiliated with the Litigation regarding the Litigation.

    ii.    Seller warrants that, should a Settlement Event occur, if asked by the District Court, Lead Counsel, the CA or any other entity affiliated with the settlement, Seller will state that (1) Seller never intended to opt-out of the Litigation; (2) Seller never gave any entity any indication of an intent to opt-out of the Litigation; and (3) Seller never authorized any entity to opt-out of the Litigation on Seller's behalf.

    iii.    Seller warrants that if requested by Purchaser and if a Settlement Event should occur, it will provide an affidavit stating that (1) Seller never intended to opt-out of the Settlement Event; (2) Seller never gave any entity any indication of an intent to opt-out of the Settlement Event; and (3) Seller never authorized any entity to opt-out of the Settlement Event on Seller's behalf.

    iv.    Seller warrants that it will never take any position inconsistent with the representations and warranties contained herein.

3.7.   <u>Independent Investigation</u>.  Aside from Representations or Warranties contained herein, Seller acknowledges that it has conducted its own independent evaluation of the transactions contemplated under this Agreement. Seller further acknowledges that it has had an opportunity to conduct its own independent investigation regarding the Asset. Seller has had an opportunity to review the documents and information available through publicly available sources of information.

3.8.   <u>No Reliance</u>.  Aside from Representations or Warranties contained herein, Seller has conducted an independent evaluation of the reasonableness of the Purchase Price and has decided to enter into this Agreement and undertake the transactions contemplated hereunder solely in reliance on its own evaluation of the Purchase Price. With the exception of any representations and warranties set forth in Section 4 of this Agreement,

4

Seller is not relying on (i) any information provided to Seller or written or oral representations, whether express or implied, by Purchaser or its respective members, shareholders, officers, directors, employees, agents or affiliates or (ii) any information provided to Seller by Purchaser or its respective shareholders, officers, directors, employees, agents or affiliates in assessing the reasonableness of the Purchase Price. Seller acknowledges that Purchaser expressly disclaims and has not made any warranties, guarantees, promises, or representations of any kind whatsoever regarding the value of the Asset and the anticipated recovery and/or timing of recovery on the Asset.

3.9.   Information. Seller acknowledges that because a Settlement Event had not taken place prior to the payment of the Purchase Price, the value of the Asset and the final recovery on the Asset may not be determined with certainty by Seller or Purchaser as of the time of execution of this Agreement. Seller further acknowledges that Purchaser may possess material information not known to Seller, and Seller agrees that Purchaser shall have no liability with respect to the non-disclosure of any such information.

3.10.  Expectation of Return. Seller acknowledges that Purchaser's sole intention and expectation in entering into this Agreement is to earn a positive financial return on the Asset. As such, Seller understands that Purchaser's recovery on the Asset may exceed the Purchase Price.

3.12   Own Advisors. Seller acknowledges that it has had an opportunity to consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement. Seller acknowledges that Purchaser has advised it that it should seek such counsel.

3.14   No Fiduciary or Confidential Relationship. Seller acknowledges that Seller and Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship, including one of trust, confidence or privity, and that Seller and Purchaser are each acting for its own self interest.

3.15   Claim Form and Amounts. The accepted Visa and or MasterCard transactions.

## SECTION 4 – REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller as follows:

4.1.   Organization. Purchaser is a limited liability company, validly existing and in good standing under the laws of the State of Delaware.

4.2.   Authorization. Purchaser has the requisite power and authority to purchase the Asset from Seller, execute and deliver this Agreement, and to perform the transactions contemplated hereby or thereby.

4.3.   Due Execution; Validly Binding. This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as may be limited by

bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the enforcement of creditors' rights in general and subject to general principles of equity.

4.4.    <u>No Litigation</u>.  There is no suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or threatened, against Purchaser that could prevent or prohibit Purchaser from purchasing the Asset or from otherwise complying in full with the provisions of this Agreement.  Transfer of the Asset pursuant to this Agreement will not breach, violate or otherwise contravene any applicable law, statute, regulation or contractual term.

4.5.    <u>Purchaser Solvent</u>.  That Purchaser is solvent and has the funds available to pay the Purchase Price as provided in section 2.2 herein.

4.6.    <u>Disclaimers:  No Representations or Warranties</u>.  Purchaser expressly disclaims and does not make any warranties, guarantees, promises, or representations of any kind whatsoever regarding the Asset, including, but not limited to:  (i) the value of the Asset; and (ii) the anticipated recovery or timing of recovery on the Asset.  Purchaser has advised Seller that it should consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement.

4.7.    <u>Independent Investigation</u>.  Aside from Representations or Warranties contained herein, Purchaser acknowledges that it has conducted its own independent evaluation of the transactions contemplated under this Agreement.  Purchaser further acknowledges that it has had an opportunity to conduct its own independent investigation regarding the Litigation, the possibility of a Settlement Event taking place, and the Asset.  Purchaser has had an opportunity to review the documents and information available through publicly available sources of information.

4.8.    <u>No Reliance</u>.  Aside from Representations or Warranties contained herein, Purchaser has conducted an independent evaluation of the transactions contemplated under this Agreement.  Purchaser has decided to enter into this Agreement and undertake the transactions contemplated hereunder solely in reliance on its own evaluation, based on such information as it has deemed appropriate under the circumstances.  With the exception of any representations and warranties set forth in Section 3 of this Agreement, Purchaser is not relying on (i) any information provided to Purchaser or written or oral representations, whether express or implied, by Seller or its agents or affiliates, or (ii) any information provided to Purchaser by Seller or its agents or affiliates.  Purchaser acknowledges that Seller expressly disclaims and has not made any warranties, guarantees, promises, or representations of any kind whatsoever regarding the Asset, including, but not limited to:  (i) the value of the Asset, and (ii) the anticipated recovery and/or timing of recovery on the Asset.

4.9.    <u>Information</u>.  Aside from Representations or Warranties contained herein, Purchaser acknowledges that, because a Settlement Event had not taken place prior to the payment of the Purchase Price, the value of the Asset and the final recovery on the Asset may not be determined with certainty by Seller or Purchaser as of the time of execution of

6

this Agreement. Purchaser further acknowledges that Seller may possess material information not known to it. Purchaser agrees that Seller shall have no liability with respect to the non-disclosure of any such information.

4.10.   Expectation of Return. Purchaser understands that Purchaser's recovery on the Asset may be less than the Purchase Price.

4.11.   Own Advisors. Purchaser acknowledges that it has had an opportunity to consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement. Purchaser acknowledges that Seller has advised it that it should seek such counsel.

4.12.   No Fiduciary or Confidential Relationship. Purchaser acknowledges that Seller and Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship, including one of trust, confidence or privity, and that Seller and Purchaser are each acting for its own self interest.

## SECTION 5 - COVENANTS OF SELLER

Seller covenants to Purchaser as follows:

5.1.   Further Assurances. Seller will reasonably provide, duly execute or deliver, or cause to be provided, duly executed or delivered, to Purchaser such further information and instruments reasonably available to it or under its possession, custody or control and do and cause to be done such further acts as may be reasonably necessary or proper to respond to any audit or inquiry by the CA, Lead Counsel or the District Court regarding the Asset.

5.2.   Waiver of Claims. To the maximum extent permitted by law, Seller will not assert and hereby waives any and all claims against Purchaser or any of its members, officers, directors, employees, agents or affiliates with respect to this Agreement, any Ancillary Agreement or the transactions contemplated hereby or thereby based on any claim that Purchaser had superior or additional information material to a decision to sell or buy the Asset.

5.3.   Covenant Not to Sue. Seller will not commence or maintain any suit thereon against Purchaser or any of its shareholders, officers, directors, employees, agents or affiliates with respect to this Agreement, or the transactions contemplated hereby, whether at law or in equity, based on any claim that Purchaser had superior or additional information material to a decision to sell or buy the Asset.

5.4.   Payment Delivery. If a CA mistakenly sends total or partial payment directly to Seller, Seller will immediately endorse such payment to Purchaser and deliver the payment to Purchaser by personal delivery or by first-class mail, certified, return receipt requested, postage prepaid and addressed to:

Cascade Settlement Services

100 Shoreline Highway, Suite B-125
Mill Valley, CA  94941
Attn:  John Chilcott

## SECTION 6 - GENERAL

6.1.  <u>Severability</u>.  In the event that any provision herein becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision.

6.2.  <u>Costs</u>.  The Parties shall each pay their own costs and expenses (including attorneys' fees and accountants' fees) incurred or to be incurred in negotiating, preparing and executing this Agreement.

6.3.  <u>Entire Agreement</u>.  This Agreement represents the entire agreement and understanding between the Parties regarding the sale and purchase of the Asset and supersedes any and all prior representations, warranties agreements and understandings, whether written or oral, concerning the sale and/or purchase of the Asset.

6.4.  <u>No Oral Modification</u>.  This Agreement may only be amended in writing signed by both Parties.

6.5.  <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to its conflict of law rules, principles or provisions of such state or of any other state.

6.6.  <u>Headings</u>.  Section headings are for convenient reference only and will not affect the meaning or have any bearing on the interpretation of any provision of this Agreement.

6.7.  <u>Counterparts</u>.  This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement.  If so signed, the Agreement becomes effective when both signature pages are attached.

6.8.  <u>Voluntary Execution of Agreement</u>.  This Agreement is executed voluntarily and without any duress or undue influence on the part or on behalf of the Parties hereto.

6.9.  <u>References</u>.  Seller agrees that Purchaser may disclose Seller's identity and the Purchase Price only to prospective sellers in an effort to promote Purchaser's business.  No other disclosures for any other reason are permitted without further written permission from Seller.

6.10.  <u>Notices</u>.  All notices, requests, demands or any other communication made under, pursuant to, or in accordance with this Agreement, except for normal day-to-day business communications, which may be made orally or in a writing, shall be in writing and shall either be delivered personally or deposited in the United States mail and sent by first-

class mail, certified, return receipt requested, postage prepaid and properly addressed as follows:

| If to Purchaser: | If to Seller: |
|---|---|
| Cascade Settlement Services, LLC<br>100 Shoreline Highway, Suite B-125<br>Mill Valley, CA  94941<br>Attn:  John Chilcott | Timothy D. Moratzka, as Trustee<br>Mackall Crounse & Moore<br>1400 AT&T Tower<br>901 Marquette Avenue<br>Minneapolis, MN  55402 |
| With a copy to:<br><br>Bond, Schoeneck & King, PLLC<br>350 Linden Oaks, Suite 301<br>Rochester, NY  14625<br>Attn:  Ingrid S. Palermo, Esq.<br>     Kevin V. Recchia, Esq. | With a copy to:<br><br>Mackall Crounse & Moore<br>1400 AT&T Tower<br>901 Marquette Avenue<br>Minneapolis, MN  55402 |

or to such other address(es) as a Party hereto may indicate to the other Party in the manner provided for herein.  Notices given by mail shall be deemed effective and complete forty-eight (48) hours following the time of posting and mailing, and notices delivered personally shall be deemed effective and complete at the time of delivery and the obtaining of a signed receipt.

IN WITNESS WHEREOF, the Agreement has been executed by the Parties as of the date and year provided above.

CASCADE SETTLEMENT SERVICES, LLC        E151 MINNESOTA, INC.
fdba SNYDER'S DRUG STORES, INC.


By: _____        By: _____
Name: John Chilcott                              Name:  Timothy D. Moratzka
Title:  Manager                                    Title:   Chapter 7 Trustee

9

**<u>Exhibit B – Notice of Assignment</u>**

To:   Claims Administrator of Any Settlement Arising from **IN RE: PAYMENT CARD INTERCHANGE FEE AND MERCHANT-DISCOUNT ANTITRUST LITIGATION** (Case Number 1:05-md-01720-JG-JO)

This Notice of Assignment transfers and assigns to **CASCADE SETTLEMENT SERVICES, LLC** ("Purchaser"), pursuant to a Bankruptcy Court Order dated _____ (attached as Exhibit A), all of **E151 MINNESOTA, INC. fdba SNYDER'S DRUG STORES, INC.** ("Company") right, title and interest in and to or associated with, or connected in any manner to, any settlement arising from the class action litigation of In Re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation (Case No 1:05-md-01720-JG-JO) (the "Settlement"), for the following entities:

| FILING ENTITY NAME | United States Bankruptcy Court District of Minnesota (Minneapolis) Case Number |
|---|---|
| E151 Minnesota, Inc. fdba Snyder's Drug Stores, Inc. | 09-48229 |

The rights assigned to Purchaser include, but are not limited to, the Company's right to file a claim and to challenge any and all estimates for payment of that claim.

Purchaser is now the legal and equitable owner of all rights associated with the Settlement. You should deal directly with Purchaser or its duly appointed agents on all matters pertaining to the Company's rights in the Settlement. Further, in accordance with the Assignment, any and all payments relating to the Settlement should be made payable to Purchaser and sent to the following address:

> Cascade Settlement Services, LLC
> 100 Shoreline Highway, Suite B-125
> Mill Valley, CA 94941
> Attn: John Chilcott

Moreover, any and all correspondence, documents or any other communications pertaining to the Settlement should be directed to Purchaser at the above address.

Company Name:   E151 Minnesota, Inc. fdba Snyder's Drug Stores, Inc.
Company Address:  7111 Cedar Lake Road South
              St. Louis Park, MN 55426

Date: _____, 2011

By: _____
Name: Timothy D. Moratzka
Title:  Chapter 7 Trustee

 **CASCADE** SETTLEMENT SERVICES

## AUTHORIZATION TO OBTAIN TRANSACTIONAL DATA

This Authorization to Obtain Transactional Data ("Authorization") is made on
_____, 2011 between Timothy D. Moratzka as chapter 7 Trustee for **E151
MINNESOTA, INC. fdba SNYDER'S DRUG STORES, INC.** ("Client") and Cascade
Settlement Services, LLC ("Cascade"), a Delaware limited liability company.

Client has assigned to Cascade all rights to any settlement arising from In re:
Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation (Case
Number 1:05-md-01720-JG-JO).

As used in this Authorization, (a) the term "Transactional Data" means data from or
related to credit card or debit card transactions in which Client received payment
for goods sold or services provided, and (b) the term "Processors" means Clients'
acquiring banks, credit card processors, any other entity involved in processing or
recording credit card or debit card transactions, and any third party holding or
possessing any or all of Client's Transactional Data.

Client hereby directs and authorizes all Processors to release and provide to
Cascade any and all Transactional Data.  Client hereby authorizes Cascade to
request, demand, obtain and receive from any source all of Client's Transactional
Data.

The undersigned has executed this Authorization as of the date set forth above.

Client: _____

Name: _____

Title: _____

Cascade acknowledges receipt of this Authorization.

Cascade Settlement Services, LLC

By: _____

Name: _____

Title: _____

U.S. BANKRUPTCY COURT
DISTRICT OF MINNESOTA

IN RE:

E151 Minnesota, Inc.                                                       CHAPTER 7
                                                        CASE NO.  09-48229-RJK

     Debtor

UNSWORN DECLARATION FOR PROOF OF SERVICE

Jinah E. Finnes_____, employed by Mackall, Crounse & Moore, attorney(s) licensed to practice
law in this court, with office address of 1400 AT&T Tower, 901 Marquette Avenue,
Minneapolis, MN 55402-2859, declares that on the date set forth below, caused the following
documents:

**Notice of Hearing on the Trustee's Motion for Authorization to Sell Rights to Payments to
Which the Debtor May be Entitled Pursuant to the Class Action Interchange
Litigation; Trustee's Motion Pursuant to Sections 363(b), (f), and (m) of the Bankruptcy
Code and Bankruptcy Rules 2002 And 6004 for Authorization to Sell Rights to Payments to
Which the Estate May be Entitled Pursuant to a Class Action; and Proposed Order**

to be filed electronically with the Clerk of Court through ECF, and that ECF will send an e-
notice of the electronic filing to the following:

- Kurt M. Anderson     kmalaw-service@qwestoffice.net, kmalaw-
  service@sprynet.com;kmalaw@qwestoffice.net
- Mychal A. Bruggeman     mab@mcmlaw.com,
  ldj@mcmlaw.com;mcm_trustee@mcmlaw.com;jef@mcmlaw.com
- Colin F Dougherty     cdougherty@faegre.com
- Stephen M Harris     sharris@meyernjus.com
- Edward T Matthews     ematthews@fredlaw.com
- Kent D. Mattson     t.chaput@pemlaw.com
- John R. McDonald     jmcdonald@briggs.com, mjacobson@briggs.com
- Timothy D Moratzka     mcm_trustee@mcmlaw.com,
  tmoratzka@ecf.epiqsystems.com;ldj@mcmlaw.com
- Timothy D. Moratzka     tdm@mcmlaw.com, ldj@mcmlaw.com;jef@mcmlaw.com
- David A. Orenstein     david.orenstein@btlaw.com, szacher@btlaw.com
- Marcus A Ploeger     mploeger@briggs.com, mjacobson@briggs.com
- Jacob B. Sellers     jsellers@winthrop.com,
  jahlers@winthrop.com;tcooke@winthrop.com
- Jeffrey D. Smith     jsmith@lindquist.com, ddavis@lindquist.com
- Joseph G Springer     jspringer@fredlaw.com
- Patrick C Summers     pcs@mcmlaw.com, kkl@mcmlaw.com
- Mark H Thieroff     markthieroff@siegelbrill.com, amyditty@siegelbrill.com
- US Trustee     ustpregion12.mn.ecf@usdoj.gov

     I further certify that I served said document upon each of the following entities who are
not on the Court's ECF system by mailing to each of them a copy thereof, enclosing same in an

envelope with first class mail postage prepaid and depositing same in the post office at
Minneapolis, Minnesota:

BRADLEY A COSMAN
SQUIRE SANDERS & DEMPSEY
40 N CENTRAL AVE STE 2700
PHOENIX, AZ 85004

E151 MINNESOTA, INC.
PO BOX 41878
PLYMOUTH, MN  55441

RONALD HOROWITZ
TINDALL PROFESSIONAL PLAZA
14 TINDALL ROAD
MIDDLETOWN, NJ 07748

INLAND REAL ESTATE CORPORATION
C/O MARK VYVYAN, ESQ.
200 S SIXTH STREET, STE 4000
MINNEAPOLIS, MN 55402

DARRELL KOEHLINGER
ADYME LLC
2925 DEAN PARKWAY STE 300
MINNEAPOLIS, MN 55416

JAMES M NJUS
MEYER & NJUS PA
200 S 6TH ST STE 1100
MINNEAPOLIS, MN 55402

PHILIP OLISS
SQUIRES SANDERS & DEMPSEY LLP
4900 KEY TOWER
127 PUBLIC SQUARE
CLEVELAND, OH 44114

And I declare, under penalty of perjury, that the foregoing is true and correct.

Dated:  August 25, 2011 _____

/e/Jinah E. Finnes _____
Jinah E. Finnes

1437317.1-JEF

UNITED STATES BANKRUPTCY COURT
DISTRICT OF MINNESOTA

_____

IN RE:                                                    Bankruptcy No. 09-48229-RJK

    E151 MINNESOTA INC.                                              Chapter 7

        Debtor.

_____

**ORDER PURSUANT TO SECTIONS 363(b), (f) AND (m) OF THE BANKRUPTCY
CODE AND BANKRUPTCY RULES 2002 AND 6004 AUTHORIZING THE
TRUSTEE TO SELL RIGHTS TO PAYMENTS TO WHICH THE ESTATE
MAY BE ENTITLED PURSUANT TO A CLASS ACTION**

_____

Upon the Motion, dated August 25, 2011 ("Motion"), of Timothy D. Moratzka,

Trustee of E151 Minnesota, Inc. fdba Snyder's Drug Stores, Inc. ("Trustee"), pursuant to

section 363 of title 11 of the United States Code ("Bankruptcy Code") and Rules 2002 and 6004

of the Federal Rules of Bankruptcy Procedure ("Bankruptcy Rules") for authorization to sell the

Debtor's rights to the Asset to Cascade Settlement Services, LLC ("Purchaser") free and clear of

all liens, claims and encumbrances for $130,000, all as more fully set forth in the Motion

pursuant to the Sale Agreement annexed hereto as Exhibit A; and the Court having jurisdiction to

consider the Motion and the relief requested therein in accordance with 28 U.S.C. § § 157 and

1334; and consideration of the Motion and the relief requested therein being a core proceeding

pursuant to 28 U.S.C. § 157(b); and venue being proper before this Court pursuant to 28 U.S.C.

§§ 1408 and 1409; and due and proper notice of the Motion having been provided; and it

appearing that no other notice need be provided; and a hearing (the "Hearing") on the Motion

having been held before the Court on September 14, 2011; and upon the record of the Hearing;

and such relief being in the best interest of the estate and creditors; and any objections to the

Motion having been resolved, withdrawn or otherwise overruled by this Court; and after due

1

deliberation, and sufficient cause appearing therefor, it is:

**FOUND AND DETERMINED THAT:**

A.      The findings and conclusions set forth herein constitute the Court's findings of fact and conclusions of law pursuant to Bankruptcy Rule 7052, made applicable to this proceeding pursuant to Bankruptcy Rule 9014.

B.      To the extent any of the following findings of fact constitute conclusions of law, they are adopted as such.  To the extent that any of the following conclusions of law constitute findings of fact, they are adopted as such.

C.      Proper, timely, adequate and sufficient notice of the Motion has been provided in accordance with sections 102(1) and 363 of the Bankruptcy Code, Bankruptcy Rules 2002, 6004, and 9014 and order of this Court, and no other or further notice of the Motion or sale shall be required.

D.      The Trustee has the authority to execute the Agreement and other documents contemplated thereby.

E.      Sound business reasons exist for the Sale pursuant to the Agreement.  Entry into the Agreement and consummation of the transactions contemplated thereby constitute the exercise by the Trustee of sound business judgment and such acts are in the best interest of the estate and creditors.  The Court finds that the Trustee has articulated good and sufficient business reasons justifying the Sale pursuant to Bankruptcy Code sections 105 and 363.  Such business reasons include, but are not limited to, the fact that the Agreement constitutes the highest and best offer for the Assets.

F.      The Agreement was negotiated, proposed and entered into by the Trustee and Purchaser without collusion, in good faith, and from arm's-length negotiating positions.  Neither

2

the Purchaser nor the Trustee have engaged in any conduct that would cause or permit the

Agreement to be avoided under Bankruptcy Code section 363(n).

      G.      A sale of the Asset other than one free and clear of liens, claims and

encumbrances would impact the estate materially and adversely and will yield substantially less

for the estate.  The Trustee may sell the Asset free and clear of all liens and claims of any kind

because one or more of the standards set forth in Bankruptcy Code section 363(f) has been

satisfied.

      H      A reasonable opportunity to be heard on the Motion was afforded to all parties in

interest.

      I.      The Purchaser is not an "insider" of the Debtor as defined in Bankruptcy Code

section 101.

      J.      Upon payment of $130,000 to Trustee, the transfer of the Asset to the Purchaser

will be a legal, valid, and effective transfer of the Asset and will vest the Purchaser with all right,

title and interest of the Debtor and its estate to the Asset free and clear of all liens, claim and

encumbrances, including those that purport to give any party any right to terminate the Debtor's

or Purchaser's rights to the Asset.

**BASED ON THE PROCEEDINGS HAD HEREIN, IT IS:**

      ORDERED that the Motion is GRANTED; and it is further

      ORDERED than any objections to the Motion, not previously withdrawn, are overruled;

and it is further

      ORDERED that the Sale Agreement, and all of its terms and conditions are approved in

their entirety; and it is further

ORDERED that pursuant to section 363(b) of the Bankruptcy Code, the Trustee is authorized to sell its rights to the Asset to the Purchaser for the consideration of $130,000 as described in the Motion; and it is further

ORDERED that pursuant to section 363(f) of the Bankruptcy Code, the sale of the Debtor and its estate's rights to the Asset to the Purchaser ("Sale") shall be free and clear of any and all liens, claims and encumbrances, with such liens, claims and encumbrances to attach to the proceeds of the Sale with the same force, effect, and priority as such liens, claims and encumbrances have on the estate's right to the Asset, as appropriate, subject to the rights and defenses of the estate and any party in interest with respect thereto; and it is further

ORDERED that pursuant to Bankruptcy Code section 363(b), the Trustee is authorized and directed to perform the obligations herein and comply with the terms of the Sale Agreement, and consummate the Sale, pursuant to and in accordance with the conditions of the Sale Agreement; and it is further

ORDERED that the Trustee is authorized to execute and deliver, and empowered to perform under, consummate and implement the Sale Agreement, together with all additional instruments and documents that may be reasonably necessary to implement the Sale Agreement, and take all further actions that may be reasonably required for the purpose of assigning, transferring, conveying and conferring the Asset to the Purchaser, or as may be necessary or appropriate to the performance of the obligations contemplated by the Sale Agreement; and it is further

ORDERED that the Purchaser is granted the protections provided to a good faith purchaser under section 363(m) of the Bankruptcy Code; and it is further

4

ORDERED that the transfer of the Asset to the Purchaser pursuant to the Sale Agreement constitutes a legal, valid, and effective transfer of the Asset; and shall vest the Purchaser with all right, title and interest of the Debtor and its estate in and to the Asset; it is further

ORDERED that the failure specifically to include any particular provision of the Sale Agreement in this Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Court that the Sale Agreement is authorized and approved in its entirety; and it is further

ORDERED that the fourteen-day stay under Bankruptcy Rule 6004(h) is waived.

ENTERED: _____

_____
Robert J. Kressel
United States Bankruptcy Court Judge

**Exhibit A - Sale Agreement**

## ASSET PURCHASE AND SALE AGREEMENT

THIS ASSET PURCHASE AND SALE AGREEMENT ("Agreement") is made and entered into this _____ day of _____, 2011, by and between CASCADE SETTLEMENT SERVICES, LLC, a Delaware limited liability company ("Purchaser"), and Timothy D. Moratzka ("Trustee"), as trustee for E151 Minnesota, Inc. fdba Snyder's Drug Stores, Inc., a debtor in bankruptcy, case number 09-48229 in the District of Minnesota ("Seller"). Purchaser and Seller are sometimes collectively referred to in this Agreement as "Parties" or individually as "Party."

## RECITALS

A.  On December 3, 2009 ("Commencement Date"), an involuntary case under section 303 of title 11 of the United States Code ("Bankruptcy Code") was commenced against the Debtor in the United States Bankruptcy Court for the District of Minnesota (Minneapolis) ("Bankruptcy Court"). Timothy D. Moratzka was appointed as Successor Chapter 7 Trustee for the Debtor ("Trustee") on January 27, 2010 ("Appointment Date").

B.  Since the Appointment Date, the Trustee has liquidated the Debtor's assets pursuant to authority granted to it by the Bankruptcy Court.

C.  The Trustee has the statutory responsibility to collect and reduce to money all of the property of the Bankruptcy Estate, including contingent interests, and close such Bankruptcy Estate as expeditiously as is compatible with the best interests of parties in interest pursuant to Bankruptcy Code section 704(a)(1).

D.  On February 20, 2009, a Second Amended Class Action Complaint entitled In re: Payment Card Interchange Fee and Merchant-Discount Antitrust Litigation (Case No. 1:05-md-01720-JG-JO) ("Litigation") was filed in the United States District Court for the Eastern District of New York ("District Court"). If the plaintiffs in the Litigation are successful in certifying a class and either prevail in the Litigation or such Litigation results in a settlement ("Settlement Event"), the Seller may be included in the class and, accordingly, may be entitled to a monetary recovery ("Asset"). Whether such recovery will occur is unknown by Seller and Purchaser at the time of this Agreement. If no Settlement Event takes place, the Asset will have no value.

E.  Purchaser is not affiliated with any counsel involved in the Litigation or the District Court.

F.  Following a Settlement Event, it is anticipated that the fixed aggregate amount of the settlement will be allocated *pro rata* among claimants to the settlement proceeds, in a manner to be described in documents approved by the District Court.

G.  All terms used herein and not defined herein shall have the meanings given such terms in the Litigation filings.

H.    The Parties intend to transfer from Seller to Purchaser any and all of the its right, title and interest in and or associated with, or connected in any manner to, any Asset that may arise from the Litigation.

I.    Purchaser is in the business of purchasing claims from entities entitled to recover funds from both existing class action lawsuit settlements and from pending class action litigation that may or may not result in a settlement.

J.    Purchaser desires to purchase the Asset from Seller, and Seller desires to sell the Asset to Purchaser as provided for in this Agreement.

**NOW, THEREFORE**, in consideration of the mutual covenants, agreements, representations and warranties contained herein and other good and valuable consideration, the receipt and sufficiency of which is hereby acknowledged, the Parties, intending to be legally bound, agree as follows:

## SECTION 1 – RECITALS INCORPORATED IN AGREEMENT

1.1    The above recitals are hereby incorporated herein by reference.

## SECTION 2 – TERMS OF PURCHASE AND SALE

2.1.    <u>Sale and Purchase of Asset</u>.  On the terms and subject to the conditions and other provisions set forth in this Agreement, Purchaser agrees to purchase all right, title and interest in the Asset from Seller, and Seller agrees to sell, transfer and assign all right, title and interest in the Asset to Purchaser subject to approval of the Bankruptcy Court, for the sum of $130,000 ("<u>Purchase Price</u>").  Following approval by the Bankruptcy Court, the sale shall be final.

2.2.    <u>Payment of Purchase Price</u>.  In consideration for the sale of the Asset by Seller to Purchaser, in accordance with this Agreement, Purchaser will wire transfer to Seller the Purchase Price using wire instructions to be provided by Seller, within 14 business days of (i) full execution of this Agreement; and (ii) approval of the sale subject to the terms of this Agreement by the Bankruptcy Court.

2.3.    <u>Purchase in Good Faith</u>.  Seller acknowledges the Purchaser's requirement that it be determined to be a "Purchaser in Good Faith" pursuant to 11 U.S.C. §363(m) in the Bankruptcy Court order approving this Agreement.

2.4.    <u>Cooperation of Seller</u>.  Seller understands and acknowledges that in order for Purchaser to verify and/or collect the Asset, Purchaser may require Seller's reasonable assistance in the event that a claims administrator appointed in the Litigation ("<u>CA</u>"), Lead Counsel or the District Court audits and/or withholds payment on the Asset pending verification of data within Seller's reasonable possession and/or control.

2

2.5.    <u>Remedy for Disallowed Purchase</u>.  If the Purchase is disallowed, for any reason, following the payment of the Purchase Price, notwithstanding Bankruptcy Court approval, the Purchaser retains the right to recover from future recoveries from the Litigation an amount equal to the sum of the Purchase Price plus interest accrued at an annual rate of 10% ("Interest Payment").  The Interest Payment will be assessed for the period of time elapsed between the date of the payment of the Purchase Price and date the Purchase Price has been repaid to the Purchaser.

2.6.    <u>Actions by Purchaser</u>.  Purchaser expressly reserves the right to take any steps it deems reasonable and necessary in order to maximize Purchaser's recovery in respect to the Asset.

2.7.    <u>Ancillary Agreement</u>.  In addition to this Agreement, the Parties will enter into the following additional agreement:  Notice of Assignment and Authorization to Obtain Transactional Data.

2.8.    <u>No Assumption of Obligations or Liabilities</u>.  Upon the later of (i) full execution of this Agreement; and (ii) approval of the sale subject to the terms of this Agreement by the Bankruptcy Court, Purchaser shall assume all obligations and liabilities relating to the Asset but shall not assume, or in any way become liable for, any other obligation or liability of the Seller independent of the Asset.

## SECTION 3 - REPRESENTATIONS AND WARRANTIES OF SELLER

Seller represents and warrants to Purchaser as follows:

3.1.    <u>Organization</u>.  Debtor is a corporation duly organized, validly existing and in good standing under the laws of the state of its organization.

3.2.    <u>Authorization</u>.  The Trustee, subject to Bankruptcy Court approval, has the requisite power and authority to own the Asset as currently owned, to execute and deliver this Agreement or any Ancillary Agreement, and to perform the transactions contemplated hereby or thereby, and that such performance does not constitute a violation of the Debtor's certificate of incorporation, by-laws or any other valid instrument to which the Debtor or Trustee are a party or by which the Debtor or Trustee may be bound.

3.3.    <u>Due Execution; Validly Binding Agreement</u>.  This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Seller, enforceable against it in accordance with its terms as approved by the Bankruptcy Court.

3.4.    <u>No Litigation</u>.  There is no known suit, action, litigation or other proceeding or governmental or administrative investigation or inquiry, pending or threatened against the Seller or concerning the Asset that could prevent or prohibit Seller from selling the Asset or from otherwise complying in full with the provisions of this Agreement except for the requirement of Bankruptcy Court approval for the sale of the Asset.  Subject to Bankruptcy Court approval, transfer of the Asset pursuant to this Agreement will not

3

breach, violate or otherwise contravene any applicable law, statute, regulation or contractual term.

3.5.    <u>Title to Asset; No Liens</u>.  Seller has good, valid and marketable title to the Asset and can sell the Asset as free and clear of any mortgage, pledge, lien, security interest, claim or encumbrance pursuant to section 363(f) of the Bankruptcy Code. Seller has not transferred the Asset or any interest therein except to Purchaser hereunder.

3.6.    <u>Information Provided to Purchaser</u>.  All information provided to Purchaser by Seller in connection with the sale of the Asset, including, but not limited to, information on dates on which the Debtor began accepting Visa and/or MasterCard credit card and/or debit transactions, financial information about the Debtor's business (including total United States sales) and any other representations actually or potentially concerning the asset is true, correct and complete. Seller has made the following Representations or Warranties to Purchaser:

    i.    Seller has not had any communications with the District Court, Lead Counsel or any other entity affiliated with the Litigation regarding the Litigation.

    ii.    Seller warrants that, should a Settlement Event occur, if asked by the District Court, Lead Counsel, the CA or any other entity affiliated with the settlement, Seller will state that (1) Seller never intended to opt-out of the Litigation; (2) Seller never gave any entity any indication of an intent to opt-out of the Litigation; and (3) Seller never authorized any entity to opt-out of the Litigation on Seller's behalf.

    iii.    Seller warrants that if requested by Purchaser and if a Settlement Event should occur, it will provide an affidavit stating that (1) Seller never intended to opt-out of the Settlement Event; (2) Seller never gave any entity any indication of an intent to opt-out of the Settlement Event; and (3) Seller never authorized any entity to opt-out of the Settlement Event on Seller's behalf.

    iv.    Seller warrants that it will never take any position inconsistent with the representations and warranties contained herein.

3.7.    <u>Independent Investigation</u>.  Aside from Representations or Warranties contained herein, Seller acknowledges that it has conducted its own independent evaluation of the transactions contemplated under this Agreement. Seller further acknowledges that it has had an opportunity to conduct its own independent investigation regarding the Asset. Seller has had an opportunity to review the documents and information available through publicly available sources of information.

3.8.    <u>No Reliance</u>.  Aside from Representations or Warranties contained herein, Seller has conducted an independent evaluation of the reasonableness of the Purchase Price and has decided to enter into this Agreement and undertake the transactions contemplated hereunder solely in reliance on its own evaluation of the Purchase Price. With the exception of any representations and warranties set forth in Section 4 of this Agreement,

4

Seller is not relying on (i) any information provided to Seller or written or oral representations, whether express or implied, by Purchaser or its respective members, shareholders, officers, directors, employees, agents or affiliates or (ii) any information provided to Seller by Purchaser or its respective shareholders, officers, directors, employees, agents or affiliates in assessing the reasonableness of the Purchase Price. Seller acknowledges that Purchaser expressly disclaims and has not made any warranties, guarantees, promises, or representations of any kind whatsoever regarding the value of the Asset and the anticipated recovery and/or timing of recovery on the Asset.

3.9.    Information. Seller acknowledges that because a Settlement Event had not taken place prior to the payment of the Purchase Price, the value of the Asset and the final recovery on the Asset may not be determined with certainty by Seller or Purchaser as of the time of execution of this Agreement. Seller further acknowledges that Purchaser may possess material information not known to Seller, and Seller agrees that Purchaser shall have no liability with respect to the non-disclosure of any such information.

3.10.   Expectation of Return. Seller acknowledges that Purchaser's sole intention and expectation in entering into this Agreement is to earn a positive financial return on the Asset. As such, Seller understands that Purchaser's recovery on the Asset may exceed the Purchase Price.

3.12    Own Advisors. Seller acknowledges that it has had an opportunity to consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement. Seller acknowledges that Purchaser has advised it that it should seek such counsel.

3.14    No Fiduciary or Confidential Relationship. Seller acknowledges that Seller and Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship, including one of trust, confidence or privity, and that Seller and Purchaser are each acting for its own self interest.

3.15    Claim Form and Amounts. The accepted Visa and or MasterCard transactions.

## SECTION 4 – REPRESENTATIONS AND WARRANTIES OF PURCHASER

Purchaser represents and warrants to Seller as follows:

4.1.    Organization. Purchaser is a limited liability company, validly existing and in good standing under the laws of the State of Delaware.

4.2.    Authorization. Purchaser has the requisite power and authority to purchase the Asset from Seller, execute and deliver this Agreement, and to perform the transactions contemplated hereby or thereby.

4.3.    Due Execution; Validly Binding. This Agreement has been duly authorized, executed and delivered and constitutes a legal, valid and binding obligation of the Purchaser, enforceable against it in accordance with its terms, except as may be limited by

bankruptcy, insolvency, reorganization, moratorium or other similar laws affecting the
enforcement of creditors' rights in general and subject to general principles of equity.

4.4.    <u>No Litigation</u>.  There is no suit, action, litigation or other proceeding or governmental
or administrative investigation or inquiry, pending or threatened, against Purchaser
that could prevent or prohibit Purchaser from purchasing the Asset or from otherwise
complying in full with the provisions of this Agreement.  Transfer of the Asset pursuant
to this Agreement will not breach, violate or otherwise contravene any applicable law,
statute, regulation or contractual term.

4.5.    <u>Purchaser Solvent</u>.  That Purchaser is solvent and has the funds available to pay the
Purchase Price as provided in section 2.2 herein.

4.6.    <u>Disclaimers:  No Representations or Warranties</u>.  Purchaser expressly disclaims and does
not make any warranties, guarantees, promises, or representations of any kind whatsoever
regarding the Asset, including, but not limited to: (i) the value of the Asset; and (ii) the
anticipated recovery or timing of recovery on the Asset.  Purchaser has advised Seller
that it should consult with an attorney and/or other relevant professional advisors prior to
the execution of this Agreement.

4.7.    <u>Independent Investigation</u>.  Aside from Representations or Warranties contained herein,
Purchaser acknowledges that it has conducted its own independent evaluation of the
transactions contemplated under this Agreement.  Purchaser further acknowledges that
it has had an opportunity to conduct its own independent investigation regarding the
Litigation, the possibility of a Settlement Event taking place, and the Asset.  Purchaser
has had an opportunity to review the documents and information available through
publicly available sources of information.

4.8.    <u>No Reliance</u>.  Aside from Representations or Warranties contained herein, Purchaser
has conducted an independent evaluation of the transactions contemplated under this
Agreement.  Purchaser has decided to enter into this Agreement and undertake the
transactions contemplated hereunder solely in reliance on its own evaluation, based on
such information as it has deemed appropriate under the circumstances.  With the
exception of any representations and warranties set forth in Section 3 of this Agreement,
Purchaser is not relying on (i) any information provided to Purchaser or written or oral
representations, whether express or implied, by Seller or its agents or affiliates, or (ii) any
information provided to Purchaser by Seller or its agents or affiliates.  Purchaser
acknowledges that Seller expressly disclaims and has not made any warranties,
guarantees, promises, or representations of any kind whatsoever regarding the Asset,
including, but not limited to: (i) the value of the Asset, and (ii) the anticipated recovery
and/or timing of recovery on the Asset.

4.9.    <u>Information</u>.  Aside from Representations or Warranties contained herein, Purchaser
acknowledges that, because a Settlement Event had not taken place prior to the payment
of the Purchase Price, the value of the Asset and the final recovery on the Asset may not
be determined with certainty by Seller or Purchaser as of the time of execution of

6

this Agreement. Purchaser further acknowledges that Seller may possess material information not known to it. Purchaser agrees that Seller shall have no liability with respect to the non-disclosure of any such information.

4.10.   Expectation of Return. Purchaser understands that Purchaser's recovery on the Asset may be less than the Purchase Price.

4.11.   Own Advisors. Purchaser acknowledges that it has had an opportunity to consult with an attorney and/or other relevant professional advisors prior to the execution of this Agreement. Purchaser acknowledges that Seller has advised it that it should seek such counsel.

4.12.   No Fiduciary or Confidential Relationship. Purchaser acknowledges that Seller and Purchaser are not in a fiduciary, confidential, agency or otherwise special relationship, including one of trust, confidence or privity, and that Seller and Purchaser are each acting for its own self interest.

## SECTION 5 - COVENANTS OF SELLER

Seller covenants to Purchaser as follows:

5.1.   Further Assurances. Seller will reasonably provide, duly execute or deliver, or cause to be provided, duly executed or delivered, to Purchaser such further information and instruments reasonably available to it or under its possession, custody or control and do and cause to be done such further acts as may be reasonably necessary or proper to respond to any audit or inquiry by the CA, Lead Counsel or the District Court regarding the Asset.

5.2.   Waiver of Claims. To the maximum extent permitted by law, Seller will not assert and hereby waives any and all claims against Purchaser or any of its members, officers, directors, employees, agents or affiliates with respect to this Agreement, any Ancillary Agreement or the transactions contemplated hereby or thereby based on any claim that Purchaser had superior or additional information material to a decision to sell or buy the Asset.

5.3.   Covenant Not to Sue. Seller will not commence or maintain any suit thereon against Purchaser or any of its shareholders, officers, directors, employees, agents or affiliates with respect to this Agreement, or the transactions contemplated hereby, whether at law or in equity, based on any claim that Purchaser had superior or additional information material to a decision to sell or buy the Asset.

5.4.   Payment Delivery. If a CA mistakenly sends total or partial payment directly to Seller, Seller will immediately endorse such payment to Purchaser and deliver the payment to Purchaser by personal delivery or by first-class mail, certified, return receipt requested, postage prepaid and addressed to:

Cascade Settlement Services

7

100 Shoreline Highway, Suite B-125
Mill Valley, CA  94941
Attn:  John Chilcott

## SECTION 6 - GENERAL

6.1.    <u>Severability</u>.  In the event that any provision herein becomes or is declared by a court of competent jurisdiction to be illegal, unenforceable or void, this Agreement shall continue in full force and effect without said provision.

6.2.    <u>Costs</u>.  The Parties shall each pay their own costs and expenses (including attorneys' fees and accountants' fees) incurred or to be incurred in negotiating, preparing and executing this Agreement.

6.3.    <u>Entire Agreement</u>.  This Agreement represents the entire agreement and understanding between the Parties regarding the sale and purchase of the Asset and supersedes any and all prior representations, warranties agreements and understandings, whether written or oral, concerning the sale and/or purchase of the Asset.

6.4.    <u>No Oral Modification</u>.  This Agreement may only be amended in writing signed by both Parties.

6.5.    <u>Governing Law</u>.  This Agreement shall be governed by and construed in accordance with the laws of the State of California, without regard to its conflict of law rules, principles or provisions of such state or of any other state.

6.6.    <u>Headings</u>.  Section headings are for convenient reference only and will not affect the meaning or have any bearing on the interpretation of any provision of this Agreement.

6.7.    <u>Counterparts</u>.  This Agreement may be executed in counterparts, and each counterpart shall have the same force and effect as an original and shall constitute an effective, binding agreement.  If so signed, the Agreement becomes effective when both signature pages are attached.

6.8.    <u>Voluntary Execution of Agreement</u>.  This Agreement is executed voluntarily and without any duress or undue influence on the part or on behalf of the Parties hereto.

6.9.    <u>References</u>.  Seller agrees that Purchaser may disclose Seller's identity and the Purchase Price only to prospective sellers in an effort to promote Purchaser's business.  No other disclosures for any other reason are permitted without further written permission from Seller.

6.10.   <u>Notices</u>.  All notices, requests, demands or any other communication made under, pursuant to, or in accordance with this Agreement, except for normal day-to-day business communications, which may be made orally or in a writing, shall be in writing and shall either be delivered personally or deposited in the United States mail and sent by first-

8

class mail, certified, return receipt requested, postage prepaid and properly addressed as follows:

| If to Purchaser: | If to Seller: |
|---|---|
| Cascade Settlement Services, LLC<br>100 Shoreline Highway, Suite B-125<br>Mill Valley, CA 94941<br>Attn: John Chilcott | Timothy D. Moratzka, as Trustee<br>Mackall Crounse & Moore<br>1400 AT&T Tower<br>901 Marquette Avenue<br>Minneapolis, MN 55402 |
| With a copy to:<br><br>Bond, Schoeneck & King, PLLC<br>350 Linden Oaks, Suite 301<br>Rochester, NY 14625<br>Attn: Ingrid S. Palermo, Esq.<br>       Kevin V. Recchia, Esq. | With a copy to:<br><br>Mackall Crounse & Moore<br>1400 AT&T Tower<br>901 Marquette Avenue<br>Minneapolis, MN 55402 |

or to such other address(es) as a Party hereto may indicate to the other Party in the manner provided for herein. Notices given by mail shall be deemed effective and complete forty-eight (48) hours following the time of posting and mailing, and notices delivered personally shall be deemed effective and complete at the time of delivery and the obtaining of a signed receipt.

IN WITNESS WHEREOF, the Agreement has been executed by the Parties as of the date and year provided above.

CASCADE SETTLEMENT SERVICES, LLC    E151 MINNESOTA, INC.
                                     fdba SNYDER'S DRUG STORES, INC.


By: _____    By: _____
Name: John Chilcott                Name: Timothy D. Moratzka
Title: Manager                     Title: Chapter 7 Trustee

9